UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TODD WEBSTER, | ) | CASE NO. 1:13CV1218 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| GREGORY SPEARS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of non-party Ohio Department of Youth Services (ODYS) to quash a subpoena served on it by plaintiff. (Doc. No. 12.) The Court directed plaintiff to show cause in writing why the motion should not be granted. (*See* Response, Doc. No. 14.) ODYS also filed a reply. (Doc. No. 15.)

Having examined the submissions, and for the reasons set forth below, the Court concludes that ODYS's motion to quash should be granted.

On June 1, 2013, plaintiff, now an adult and represented by counsel, filed this action for damages, alleging that, at a time when he was a juvenile detained at the Mohican Juvenile Correctional Facility (MJCF), he was subjected to excessive force by defendant, Gregory Spears, a juvenile correctional officer then employed by MJCF. Spears is sued solely in his individual capacity.

Fed. R. Civ. P. 4(m) provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a

specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

On September 26, 2013, a few days before that 120-day period for service had expired, plaintiff successfully moved for an extension until November 13, 2013 to serve Spears, representing to the Court that he had been unable to locate Spears. On December 2, 2013, plaintiff moved for and received another extension, creating a new deadline for service of January 13, 2014. On February 12, 2014, plaintiff sought a third extension of time to serve Spears. Although plaintiff's second and third motions were both untimely, the Court found, perhaps too generously, that plaintiff had established "excusable neglect for the untimeliness of the motion[s]." (Order, Doc. No. 10 at 37, citing Fed. R. Civ. P. 6(b)(1)(B).)

In its Order dated March 18, 2014, granting the third motion, the Court stated that it "cannot continue indefinitely giving extensions[,]" and set a definite deadline for service of "not later than April 14, 2014." (*Id*. at 38.) The Court declared that "this will be the final extension granted in this case for service of process." (*Id.*) The Court also granted plaintiff leave to conduct "some narrow early discovery" by "serv[ing] on defendant Spears's former employer a subpoena under Fed. R. Civ. P. 45 to provide Spears's last known address." (*Id*.)

On March 31, 2014, ODYS filed its motion to quash, wherein it represents that the subpoena was served on March 20, 2014. Despite the fact that a mere two weeks remained for plaintiff to serve defendant, plaintiff filed no immediate response to the motion. Finally, on April 4, 2014, the Court directed plaintiff to show cause by April 11, 2014 why the motion should not be granted. Plaintiff filed his response at 5:20 p.m., despite knowing that his final deadline for service of process was Monday, April 14, 2014.

The motion to quash raises a meritorious argument that, as a general principle, the residential addresses of correctional officers should be protected from disclosure on the public record. ODYS relies on *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) to argue that release of Spears's home address "would expose [d]efendant to a serious risk of retaliation at the hands of an ex-prisoner empowered with information which [sic] he otherwise could not access because youth services employees' home addresses are expressly protected by state law." (Motion at 43 [citing Ohio Rev. Code § 149.43(A)(1)(p) and (7)(a)][1].)

In *Kallstrom*, the court recognized the "state-created danger doctrine," where a governmental actor can be held responsible for an injury committed by a private person if "affirmative acts by the state . . . create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom*, 136 F.3d at 1066 (citations omitted); *see also McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir. 2006) (finding the roots of the state-created danger doctrine in *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). The risk created must be a "special danger," not just a risk that might affect the public at large. *Id.*

---

[1] These sections, which relate to the availability of public records in Ohio, state:

    (1)    "Public record" means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to section 3313.533 of the Revised Code. "Public record" does not mean any of the following:

    \* \* \*

    (p)    . . . [Y]outh services employee . . . residential and familial information;

    \* \* \*

    (7)    "[Y]outh services employee . . . residential and familial information" means any information that discloses any of the following about a . . . youth services employee . . . :

        (a)    The address of the actual personal residence of a . . . youth services employee, . . . except for the state or political subdivision in which the . . . youth services employee . . . resides[.]

Although *Kallstrom* involved protection of undercover officers,[2] the reply brief, by way of an attached affidavit, very effectively demonstrates that applicability of the principles enunciated in *Kallstrom* is warranted here, and requires protection from disclosure of Spears's residential address.[3]

Plaintiff, in response to the motion, agrees to enter into a protective order, as requested in the alternative by ODYS, but has not supplied the Court with the proposed language for such order, despite the limited timeframe that remained for service as of the date and time of the filing of his response.

---

[2] In *Kallstrom*, three undercover police officers had been involved in the investigation of a drug conspiracy, which led to prosecution of 41 gang members. The officers testified at their trial. Upon defense counsel's request during the trial, information from the officers' personnel files (including personal information about both the officers and their family members) was disclosed by the City to the defense, who, in turn, appeared to have disclosed the information to his clients. The officers sued for damages and injunctive relief under 42 U.S.C. § 1983, alleging that their Fourteenth Amendment right to privacy had been violated. The district court entered judgment for the City, concluding that the officers did not have a constitutionally-protected right not to have the information released. On appeal, the Sixth Circuit reversed, holding that the officers were deprived of a fundamental liberty interest in "preserving their personal security and bodily integrity[,]" 136 F.3d at 1062, that "the officers and their families [were placed] at substantial risk of serious bodily harm," *id.* at 1069, and that City was "liable to them under § 1983 for damages incurred." *Id*.

[3] In his affidavit (Doc. No. 15-1), David Pigman, the Facility Resource Administrator for ODYS, attests that the facility's documentation relating to plaintiff's incarceration reveals the possible danger posed by plaintiff's knowledge of Spears's residential address. Specifically, plaintiff was classified as "close security," a classification resulting in the highest degree of custody and the lowest degree of liberty. (Pigman Aff. ¶ 4.) Plaintiff spent the majority of his time in this classification. On two occasions, his classification was changed to "medium security." However, following each occasion, he had to be reclassified to "close security" due to his aggression and other acts that were considered a threat to the security of the facility. (*Id*.) Plaintiff admitted to ODYS staff that he engaged in gang activities while in the community and even while confined. (*Id*. ¶ 6.) While confined, he consistently violated the facility's policies, with incidents that included attempted escapes, assaults, fights with other youths, destruction of state property, failure to comply with staff instructions, exposing himself to staff members, and throwing urine and other unknown fluids on staff members. (*Id*. ¶ 7.) He also assisted in the assault of others, by holding a youth down so that another youth could assault him and by covering cameras to allow youth to fight. (*Id*.) On at least one occasion plaintiff's resistance, threats and refusal to comply with requests required the utilization of a shield team to gain his compliance and assure the safety of others. (*Id*. ¶ 8.) On one occasion, he sent a letter to his own sister, attempting to solicit her to join a gang and threatening to "introduce[ ] [her] to the cousin of sleep[ ]" should she "forsake this trail[.]" (*Id.* ¶ 9.) On several occasions when plaintiff became upset or angry, he would destroy property and become physically aggressive: knocking a sprinkler head off causing flooding; grabbing a chair, throwing it at a wall and charging a staff member when confronted about the inappropriate behavior; banging and kicking doors while cursing at staff; kicking at staff during interventions; throwing things in school classrooms; punching through a notice board and attempting to push past staff; and throwing items at other youth. (*Id*. ¶ 10.)

The Court is now of the view that it has already granted plaintiff *more* than an "appropriate period" of time for service of the summons and complaint filed on June 1, 2013. The Court's own review of the record in this case reveals no specific steps that plaintiff has taken to locate defendant on his own, other than belatedly hiring a process server whose efforts have been unsuccessful.[4] There is nothing in the current record before the Court to suggest that even denying the motion to quash and entering a protective order will result in a viable address for service upon Spears. Although plaintiff asserts that ODYS is "likely to have current location information for defendant[,]" (Doc. No. 9 at 34), he provides no reason why he believes that is so.[5] Plaintiff's own motions for the various extensions he sought suggest that he has already checked two or three separate addresses and found that defendant no longer resides at any of them. There is nothing to suggest that ODYS would have more current information, if it has any information at all. Moreover, and very importantly, the record now confirms that it would be ill-advised for plaintiff to have knowledge of defendant Spears's residential address.

Even though the Court now reaches the conclusion that sufficient extensions have already been granted, and notwithstanding the Court's prior "final" deadline of April 14, 2014 to effect service, because the Court will not require ODYS to disclose defendant Spear's last known

---

[4] On September 26, 2013, when only about five days remained for service under the civil rules, plaintiff represented in his first motion for extension that he was "in the process of retaining a process server in an attempt to confirm [a] possible address of Defendant and to serve Defendant prior to the expiration of the 120 day period set forth in Fed. R. Civ. P. 4(m)." (Doc. No. 4 at 23.)

[5] If there were some indication that ODYS, as a former employer, had reason to remain in touch with Spears (e.g., to mail him a pension check, or the like), the Court might safely assume that refusing to quash the subpoena might bear fruit with respect to providing a viable address. There is no such indication here.

address, the Court will afford plaintiff an additional fourteen (14) days to serve defendant Spears. Failure to effect service upon defendant Spears by May 7, 2014, shall result in dismissal of the case. The motion to quash (Doc. No. 12) is **GRANTED**.

       **IT IS SO ORDERED**.


Dated: April 23, 2014

       **HONORABLE SARA LIOI**
       **UNITED STATES DISTRICT JUDGE**